UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CURTIS ROBINSON, #00-B-0830,

        Petitioner,

        -v-                                 06-CV-859(MAT)
                                                   **ORDER**

JAMES T. CONWAY,

        Respondent.

---

## I. Introduction

Petitioner Curtis Robinson, ("petitioner") has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction of Murder in the Second Degree (N.Y. Penal L. § 125.25[2]) and Criminal Possession of a Weapon in the Second Degree (N.Y. Penal L. § 265.03[2]). Petitioner was convicted following a jury trial in Monroe County Court before Judge Frank Geraci on April 5, 2000, and was sentenced to twenty-five years to life imprisonment on the murder conviction and fifteen years imprisonment with five years of post-release supervision on the weapon possession conviction. S. 12-19.[1]

## II. Factual Background and Procedural History

Shortly after midnight on June 1, 1999, five young men, including Jamont Simmons ("the victim") arrived at the corner of North Goodman Street and Garson Avenue in the City of Rochester. As

---

[1] Citations to "S.\_\_" refer to the sentencing transcript.

they exited the car, some of them entered a corner store, while the victim's brother, John Simmons ("John"), remained outside to talk to a girl. T. 411-414.[2] As he stood outside talking, petitioner's friend Nathanial Williams ("Nate") approached. Nate and John began to argue. A third man, Sean, became involved and punched Nate in the face. T. 415, 439, 565. At some point, Nate displayed a small, chrome-colored revolver. While the three men continued to argue, petitioner approached. One of the men who witnessed the altercation observed Nate pass the gun to petitioner, who "started acting all wild," and "got all crazy." T. 568. According to that witness, petitioner said to John, "I ain't scared to shoot you." T. 569.

The victim came out of the corner store and soon became engaged in the discussion, telling petitioner, "we ain't scared no guns . . . if you want to fight, fight. You don't got to shoot." After a few more verbal exchanges, petitioner pointed the gun at the victim, shot him, and then fired several more shots as he ran down the street, none of which hit the victim. T. 427, 570-72. A bystander also testified that he saw petitioner shoot the victim in the chest after being handed a gun, and then ran away firing rounds. Petitioner and Nate then fled the scene on bicycles. T. 480-81.

Petitioner was taken into custody by police on the evening of June 2, while he was visiting his parole officer. That night,

---

[2] Citations to "T.__" refer to the trial transcript.

petitioner acknowledged that he was present when the victim was shot, but denied that he was the shooter. Rather, he told investigators that Nate shot the victim, and that he briefly held the gun that was used in the shooting because Nate tried to pass it to him as the two ran from the scene. This version of events was eventually reduced to writing and signed by the defendant. T. 660-62, 667-69, 670-79. At trial, petitioner testified that Nate fired the fatal shot, and that petitioner had merely touched the weapon for a short period of time while the two men fled the scene. T. 732-38.

The jury found petitioner guilty of second-degree criminal possession of a weapon and of second-degree murder under a depraved indifference theory[3].

Through counsel, petitioner filed a direct appeal to the Appellate Division, Fourth Department, in which he raised the following claims: (1) the evidence was legally insufficient to establish guilt of depraved indifference murder; (2) ineffective assistance of trial counsel; and (3) the trial court erred in allowing inadmissible testimony. See Petitioner's ("Pet'r") Appellate Br. 9-28. Petitioner's judgment of conviction was unanimously affirmed. People v. Robinson, 21 A.D.3d 1413 (4th Dept. 2005); lv. denied, 5 N.Y.3d 885 (2005).

---

[3] Petitioner was charged with two counts of murder in the second degree under alternative theories: intentional murder (N.Y. Penal L. § 125.25[1]) and depraved indifference (reckless) murder (N.Y. Penal L. § 125.25[2]). See People v. Gallagher, 69 N.Y.2d 525 (1987).

Petitioner then filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2254. He has raised essentially the same claims as he did on direct appeal, and has added a claim that the jury's verdict was against the weight of the evidence. See Petition ("Pet.") ¶ 22. (Dkt. #1). For the reasons that follow, the Court finds that petitioner is not entitled to habeas relief and the petition is dismissed.

**III. Discussion**

    **A.   General Principles Applicable to Federal Habeas Review**

        **1.   Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1),(2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

        **2.   Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." 28

-4-

U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984). "The exhaustion requirement is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Jimenez v. Walker, 458 F.3d 130, 148-149 (2d Cir. 2006) (internal citations and quotation marks omitted).

### 3. Adequate and Independent State Grounds Doctrine

It is a well-settled aspect of federal habeas jurisprudence that if "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent (1) a showing of cause for the default and actual prejudice attributable thereto, or (2) a showing that failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A state ground will create procedural default sufficient to bar habeas review if the state ground first was an "independent" basis for the decision; this

means that "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." In addition, the state procedural bar must be "adequate" to support the judgment-that is, it must be based on a rule that is "'firmly established and regularly followed' by the state in question ." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

**B.   Merits of the Petition**

**1.   Sufficiency/Weight of the Evidence**

Petitioner first claims that the evidence is legally insufficient to support his conviction of depraved indifference murder, and that the verdict was against the weight of the evidence[4]. Pet. ¶ 22(A), (D). The Appellate Division rejected

---

[4] Weight of the evidence claims derive from C.P.L. § 470.15[5], which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." C.P.L. § 470.15[5]; see also People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Because a weight of the evidence claim is grounded solely in New York State's criminal procedure

petitioner's legal insufficiency claim on the ground that it was unpreserved for appellate review. Robinson, 21 A.D.3d at 1413 (citing People v. Gray, 86 N.Y.2d 10, 19 (1995) (holding that a party seeking to challenge the sufficiency of the evidence must contemporaneously object by making a trial order of dismissal and must "specifically direct[ ]" his argument at the alleged error to preserve the claim for appellate review)).

Because the Appellate Division relied on a state procedural rule[5] to reject petitioner's legal insufficiency argument, the claim is precluded from habeas review pursuant to the adequate and independent state ground doctrine. See, e.g., Richardson v. Greene, 496 F.3d 212, 218 (2d Cir. 2007) (recognizing New York's "contemporaneous objection" rule as an adequate and independent state ground barring habeas review); see also Fore v. Ercole, 594 F.Supp.2d 281 (E.D.N.Y. 2009) (finding appellate court's determination that petitioner failed to preserve his sufficiency challenge by making only a general motion to dismiss was an adequate and independent state ground); Walker v. Goord, 427 F.Supp.2d 272 (W.D.N.Y. 2006) (appellate court's rejection of legal insufficiency claim based on New York's contemporaneous objection

---

statute, it is not cognizable on habeas review. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

[5] See N.Y.Crim. Proc. Law 470.05(2) (codifying New York's contemporaneous objection rule).

rule was an adequate and independent state ground barring habeas review).

To overcome the procedural bar, petitioner must demonstrate either (1) cause for the default and prejudice attributable thereto; or (2) that the failure to consider the federal claim will result in a fundamental miscarriage of justice (i.e., a constitutional error has probably resulted in the conviction of someone who is actually innocent). Coleman v. Thompson, 501 U.S. at 750. Although petitioner does not allege cause and prejudice, or that he is actually innocent, he has set forth an independent claim in this petition that trial counsel was ineffective for failing to preserve the legal insufficiency claim when he did not make the requisite motion seeking dismissal of the depraved indifference murder charge.

It is true that attorney error may constitute "cause" excusing the procedural default. See Bossett v. Walker 41 F.3d 825, 829 (2d Cir. 1994) (cause may be demonstrated with showing that factual or legal basis for claim was not reasonably available to counsel, or that some interference by state officials made compliance impracticable, or that procedural default is result of ineffective assistance of counsel). To establish "cause" under this exception, counsel's performance must be so egregious as to fail to satisfy the defendant's Sixth Amendment right to effective assistance of counsel. Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citing

Murray v. Carrier, 477 U.S. 478, 488-89 (1986)).

Further, the exhaustion doctrine "requires that a claim of ineffective assistance be presented to state courts as an independent claim before it may be used to establish cause for a procedural default" in the context of a petition for a federal writ of habeas corpus. Id. (citing Murray, 477 U.S. at 489). Thus, to claim that attorney error excuses a procedural default, a habeas petitioner must either have properly presented and exhausted an ineffective assistance of counsel claim in the state courts. See Edwards, 529 U.S. at 453. Petitioner's appellate counsel did assert on direct appeal that trial counsel's performance had been constitutionally ineffective because he did not make a specific motion to dismiss as to the depraved indifference murder charge. However, the Appellate Division rejected this contention, holding that petitioner "failed to demonstrate the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct, and thus has failed to establish that he was denied meaningful representation." Robinson, 21 A.D.3d at 1413 (internal quotations and citations omitted).

Unless petitioner has a meritorious claim of ineffective assistance of trial counsel, he cannot use trial counsel's errors as "cause" to excuse the procedural default. Gibbs v. Donnelly, No. 03-CV-361, 2009 WL 4572733 at *11 (W.D.N.Y. Dec. 7, 2009). As discussed below, petitioner has not presented a viable claim of

constitutionally ineffective assistance of counsel. See infra, part III.B.2. Petitioner's failure to demonstrate cause "obviates the need for the Court to undertake an analysis of whether any purported cause proved prejudicial." Jamison v. Smith, No. 94 CV 3747(FB), 1995 WL 468279, *3 (E.D.N.Y. July 26, 1995) (citing Roberts v. Scully, 875 F.Supp. 182, 193 (S.D.N.Y. 1995) ("That being the case [where petitioner failed to establish cause for the default], these claims are barred even without our consideration of whether petitioner can demonstrate prejudice"). This claim is therefore dismissed.

### 2. Ineffective Assistance of Trial Counsel

Petitioner argues, as he did on direct appeal, that his trial counsel was ineffective for failing to move to dismiss the charge of depraved indifference murder. Pet. ¶ 22(B); Pet'r Mem. at 1-2 (Dkt. ## 1,15). Rather, counsel made a general motion to dismiss the indictment in its entirety at the close of the prosecution's case. T. 727, 762. The Appellate Division rejected this claim on the merits. Robinson, 21 A.D.3d at 1413.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is

demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690. Therefore, to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's performance was so objectively unreasonable that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

To support petitioner's argument that his counsel was ineffective, he states that the evidence at trial "supports a finding, clearly uncontroverted by trial evidence, of intentional murder." Pet'r Mem. at 1-2 (Dkt. #15). The Court is cognizant of the significant developments in New York regarding the law of depraved indifference murder and the legal sufficiency of evidence supporting such a claim in recent years. See Rustici v. Phillips, 497 F.Supp.2d 452, 484 (E.D.N.Y. 2007) (citing, *inter alia*, People

v. Feingold, 7 N.Y.2d 288 (2006)). At the time of petitioner's trial and conviction, however, the controlling New York Court of Appeals case regarding the interpretation of Penal Law § 125.25(2)[6], the depraved indifference murder statute, was People v. Register, 60 N.Y.2d 270 (1983) (the requisite *mens rea* for depraved indifference murder was recklessness, where depravity and indifference were assessed objectively based on a review of the circumstances of the crime), overruled by People v. Feingold, 7 N.Y.3d 288(2006).

In the instant case, petitioner became involved in a spontaneous altercation over a girl on a street corner with a group of several young men, one of whom was the victim's brother John. After Nate handed petitioner the gun, petitioner boasted to John that he was not afraid to shoot, and that "you gave the wrong person the gun. I bust [I'll shoot]." T. 569. In response, the victim approached and said, "you ain't going to shoot my brother," to which petitioner replied, "I shoot you then." The victim and petitioner began to argue. When the victim said, "He [petitioner] ain't going to do nothing," petitioner pointed the gun and shot the victim in the chest, firing additional rounds as he ran off. T.

---

[6] A person is guilty of depraved indifference murder when "he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person[.]" N.Y. Penal L. § 125.25[2]. The Penal Law provides that "[a] person acts recklessly . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur . . . ." N.Y. Penal L. § 15.05[3]. Contrarily, a person is guilty of intentional murder when, "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person . . . ." N.Y. Penal L. § 125.25[1].

-12-

568-571.

Reviewing the evidence in the light most favorable to the prosecution, Jackson v. Virginia, 443 U.S. 307, 319 (1979), a rational jury could have concluded that petitioner's conduct was "imminently dangerous" and presented such "a high risk of death" as to "evidence[ ] a wanton indifference to human life or a depravity of mind," Register, 60 N.Y.2d at 274-77. Put another way, his conduct was not specifically designed to kill, but rather, as a result of being swept up in a display of power, petitioner was momentarily indifferent to the fact that the shooting could (and ultimately did) cause the victim's death. The trial evidence demonstrates that petitioner indeed possessed the intent to *shoot*, but the jury found that the proof was insufficient to conclude that he intended to *kill* the victim. A motion to dismiss the charge of reckless murder, therefore, would likely have been unsuccessful.

Moreover, petitioner's defense was that it was Nate Williams who shot and killed the victim. That version of events would have been a complete defense to both intentional and depraved indifference murder, rendering the theory of the murder irrelevant. Defense counsel's decision to make a general motion to dismiss could be thus attributable to reasonable trial strategy, and, in any event, petitioner was not prejudiced by his attorney's omission. See Faeth v. Conway, No. 03-CV-0924(VEB) 2009 WL 1956443 at *7 (W.D.N.Y. July 7, 2009) ("A defendant cannot show that he was

-13-

prejudiced by trial counsel's failure to make a non-meritorious motion.").

The Appellate Division's holding was therefore not contrary to, or an unreasonable application of Strickland v. Washington, and this claim is dismissed.

### 3. Improperly Admitted Inferential Hearsay Testimony

Finally, petitioner challenges the admission of trial testimony by a Rochester Police detective because it constituted inferential bolstering[7]. Pet. ¶ 22(C). Specifically, petitioner claims that the following testimony allowed an impermissible inference that Nate Williams, who was allegedly present at the shooting but did not cooperate with investigators, identified petitioner as the shooter:

> Prosecutor: Based upon your conversation with Nate Williams, do you have any evidence to charge him?
>
> Defense: Objection, Judge . . . .
>
> The Court: Sustained.
>
> Prosecutor: Do you have any evidence to charge him for a crime that occurred on June 1, 1999?

---

[7] See, e.g., People v. Trowbridge, 305 N.Y. 471 (1953) (prohibiting testimony of a previously-made identification) overruled by N.Y. Crim.Proc.Law § 60.25 (permitting the fact of the prior identification to be established by the testimony of another person where the identifying witness is unable to make an identification at trial); see also People v. Brown, 129 A.D.2d 450, 455 (1st Dept. 1987) ("[I]t was error to admit evidence that the arresting detective was assisted in locating and identifying the defendant by information provided by an unidentified person . . . . This evidence constituted inadmissible hearsay.")

-14-

```
Defense:        Objection.

Prosecutor:     Your Honor, may we approach?

The Court:      Overruled; I'll allow that answer.

Witness:        Yes.

Prosecutor:     What crime?

Defense:        Objection, Judge.

The Court:      Overruled. Go ahead.

Witness:        Criminal Possession of a weapon.
```
T. 702-03.

The Appellate Division rejected petitioner's argument on the merits: "Even assuming, arguendo, that the court erred in admitting that testimony, we conclude the error is harmless. The evidence of defendant's guilt is overwhelming, and there is no significant probability that the jury would have acquitted defendant but for the alleged error." Robinson, 21 A.D.3d at 1414 (citation omitted).

District courts in this circuit have repeatedly held that violations of the bolstering rule do not present a basis for habeas relief. Ayala v. Hernandez, 712 F.Supp. 1096 (E.D.N.Y. 1989) ; see also, Snow v. Reid, 619 F.Supp. 579, 582 (S.D.N.Y. 1985) ("The concept of 'bolstering' really has no place as an issue in criminal jurisprudence based on the United States Constitution. It is at most a New York State rule or policy, derived from People v. Trowbridge . . . . Violation of that rule, as is so with regard to many such state court rules, does not rise to a constitutional

level."); see also Nieves v. Fischer, 03 Civ. 9803(DC), 2004 WL 2997860 at *7 (S.D.N.Y. Dec. 28, 2004) ("While the practice of bolstering is prohibited in various states, including New York, it is not sufficiently prejudicial to deprive a defendant of his due process rights to a fair trial.") (internal quotation marks omitted); Glover v. Burge, 652 F.Supp.2d 373 (W.D.N.Y. 2009) ("An error of state evidentiary law is not a sufficient predicate for habeas relief, and the overwhelming weight of federal authority in this Circuit holds that "bolstering" of a prosecution witness' testimony does not state a constitutional claim redressable on federal habeas review.")(citing Benitez v. Senkowski, No. 97 Civ. 7819(DLC), 1998 WL 668079, at *5 (S.D.N.Y. Sept. 17, 1998) (complaint of bolstering does not state federal claim)). Accordingly, this claim is dismissed.

**IV. Conclusion**

For the reasons stated above, Curtis Robinson's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because the petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies

leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

                                                    s/Micheal A. Telesca
                                                      MICHAEL A. TELESCA
                                      United States District Judge

Dated: February 12, 2010
       Rochester, New York